# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2013

No. 11-60699

Lyle W. Cayce
Clerk

IMOGENE WATSON, on behalf of the Estate of Derek Watson, deceased, and on behalf of Decedent's two minor children, Sincere Robinson and Devonte White, and on behalf of all those entitled to recover under the wrongful death statute,

Plaintiff–Appellee

v.

FLASCO BRYANT, individually and in his official capacity as a Police Officer,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:08-CV-161

Before DeMOSS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Flasco Bryant appeals from the district court's denial of qualified immunity on Plaintiff-Appellee Imogene Watson's ("Ms. Watson")

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60699

Fourth Amendment claims brought under 42 U.S.C. § 1983. We REVERSE and REMAND.

## I. Facts and Procedural History

One evening Samantha Williams called the City of Leland, Mississippi, Police Department to report that her boyfriend, Derek Watson ("Derek"), had assaulted her at a local club. Leland police officers, including Bryant, knew of the couple's contentious and sometimes violent relationship and had responded to several domestic-violence calls over the previous year, some of which resulted in Derek's arrest.

Bryant proceeded to the club. He met Williams inside and noticed injuries on her face and neck. Because Williams was intoxicated, Bryant advised her to wait until the morning to file charges, pursuant to Department policy. Derek's whereabouts were unknown at that point. Bryant resumed his patrol.

Williams later called back to say that Derek had returned to the club and was harassing her. He left before Bryant arrived. Bryant decided to patrol the area in search of him.

Bryant found him walking a few blocks away. Derek had on a hooded coat, and he had his hands in the coat's pockets. Bryant rolled down his window, noticed that Derek appeared to be intoxicated,[1] and warned him to stay away from Williams and the club for the rest of the evening. Derek agreed to walk to his mother's house, and he set off in that direction. Bryant drove off.

Shortly after resuming his patrol, Bryant saw Derek heading towards the club. Bryant positioned his police cruiser in Derek's path and told him to stop and to show his hands. Derek stopped, but he kept his hands concealed. Bryant exited his car and, while drawing his service pistol, again instructed Derek to take his hands out of his pockets. He failed to do so.

---

[1] Although Ms. Watson tries to cast doubt on this assessment, a toxicology report shows that Derek had a blood-alcohol level above the legal limit for operating a vehicle.

No. 11-60699

Bryant approached Derek, grabbed him by his collar, and took him to the ground. Derek landed on his side, and Bryant rolled him onto his stomach. Bryant, still holding his pistol, positioned himself on Derek's back and managed to handcuff Derek's left hand. Derek, however, failed to pull his right hand out of his pocket despite Bryant's repeated instructions to show his hands.

Using the same hand that held his pistol, Bryant attempted to secure Derek's right hand. After a few tries, Bryant finally extracted it from the pocket and went to place it on Derek's back, adjacent to the already-cuffed left hand. As he did, the pistol fired, fatally striking Derek in the back.

During the ensuing internal investigation, the Leland City Council voted to terminate Bryant's employment, and he retired from law enforcement. The record does not contain the investigation's results. Ms. Watson sued Bryant and the City of Leland, bringing various constitutional and state-law claims.

Relevant here, the district court denied Bryant qualified immunity on Ms. Watson's Fourth Amendment claim, bifurcating the claim into separate unlawful-arrest and excessive-force violations.[2] The court determined that genuinely disputed material facts preclude immunity, but it did not specifically identify the facts or evidence supporting that conclusion. It did, however, observe that the excessive-force claim was "infinitely stronger" than the unlawful-arrest claim, "so much so" that it intended at trial to grant a directed verdict in Bryant's favor as to the unlawful-arrest claim and to give a peremptory instruction in Ms. Watson's favor on the excessive-force claim. The district court reasoned that deciding otherwise would have "left [Ms. Watson] with the options of, in effect, either proving that Officer Bryant deliberately murdered [Derek] or foregoing any recovery at all." Bryant timely appealed.

---

[2] State-law claims remain pending against Bryant and are not the subject of this interlocutory appeal.

3

No. 11-60699

## II. Guiding Principles

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2083 (citation omitted). This "objective legal reasonableness" standard "'ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (citation omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (internal quotation marks and citations omitted).

Defendants must affirmatively invoke qualified immunity. *See Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). Once raised, plaintiffs have the burden to "negate" qualified immunity by introducing evidence that, viewed in the light most favorable to the plaintiff, suggests that the defendant violated a clearly established constitutional right. *See Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). In line with standard summary judgment principles, plaintiffs "need not present 'absolute proof,' but [they] must offer more than 'mere allegations.'" *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citation omitted). That evidence, moreover, must create a genuine dispute on facts material to the alleged constitutional violation; it is not enough to show the existence of a genuine dispute on immaterial facts or that a collection of

undisputed facts "'imply a speculative scenario that has no factual support.'" *Manis*, 585 F.3d at 845 (citation omitted).

Courts generally lack jurisdiction to review denials of summary judgment. An exception exists for rulings that refuse a defendant entitlement to qualified immunity because the doctrine provides "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 530 (1985). Even then, jurisdiction extends only to issues of law; appellate courts cannot revisit a trial court's determination "that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in [unconstitutional] conduct." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). Accordingly, courts may "review the *materiality* of any factual disputes, but not their *genuineness*." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000). "The scope of clearly established law and the objective reasonableness of [the defendant's] acts . . . are legal issues [that] we review *de novo*." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001).

A district court's bare conclusion that fact issues exist, however, does not bar review of a denial of qualified immunity. Appellate courts confronted with such rulings have two choices. They can "scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues." *Id.* Alternatively, they can "remand so that the trial court can clarify the order." *Id.* Mindful of the Supreme Court's admonition to decide "immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam), and in light of the fact that discovery has ended, we opt to "scour" the relatively limited record here.

## III. Ms. Watson Fails to Negate Bryant's Entitlement to Immunity

Having examined the record, we conclude that it casts no doubt on Bryant's version of Derek's death as "the result of a tragic and deeply regrettable, unintentional, accidental, discharge." *Culosi v. Bullock*, 596 F.3d

195, 200 (4th Cir. 2010).  The Supreme Court and this circuit have long held that Fourth Amendment violations occur only through intentional conduct.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (Successful Fourth Amendment claims establish "a governmental termination of freedom of movement *through means intentionally applied*."); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) ("The constitutional right to be free from unreasonable seizure has never been equated by the [Supreme] Court with the right to be free from a negligently executed stop or arrest.  There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation.").

In the absence of evidence showing that Bryant intended to use deadly force, we must conclude that the negligent shooting here did not itself violate Watson's Fourth Amendment rights.  *See Baskin v. City of Houston, Miss.*, 378 F. App'x 417, 418 (5th Cir. 2010) (unpublished); *McCoy v. City of Monticello*, 342 F.3d 842, 847-49 (8th Cir. 2003) (reversing district court's denial of qualified immunity where unarmed suspect, who was attempting to surrender, sustained a gunshot wound after officer slipped on ice); *Pleasant v. Zamieski*, 895 F.2d 272, 276-77 (6th Cir. 1990) (accidental shooting did not violate the Fourth Amendment); *Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987) (reh'g op.) (same; shooting was a "pure accident"); *Leber v. Smith*, 773 F.2d 101, 104-05 (6th Cir. 1985) (holding that plaintiff's unreasonable-seizure claim failed as a matter of law in an accidental shooting case and, therefore, declining to reach qualified immunity); *Wilson v. Beebe*, 770 F.2d 578, 584-86 (6th Cir. 1985) (en banc) (holding that due-process was not violated where officer's pistol accidentally discharged as he handcuffed a suspect, and suggesting that an unraised Fourth Amendment claim would have failed).

An undisputedly accidental shooting, however, does not end the inquiry.  Bryant still may have violated the Fourth Amendment if he acted objectively

unreasonably by deciding to make an arrest, by drawing his pistol, or by not reholstering it before attempting to handcuff Derek. *See, e.g.*, *Pleasant*, 895 F.2d at 276. We agree with the district court that the material evidence on the first two of these arrest-related issues favors Bryant. We disagree, however, with the district court's conclusion that Bryant must wait until a directed verdict at trial to be released from liability on that part of Ms. Watson's Fourth Amendment claim, and with its implicit conclusion that Bryant was "plainly incompetent" in not reholstering his gun.

On this record, the material facts, construed in Ms. Watson's favor, do not show that Bryant acted objectively unreasonably in effectuating Watson's arrest. At the time of arrest, Bryant knew the following undisputed facts: that Derek had previously abused Williams; that Williams claimed Derek had assaulted her that evening; that Williams exhibited injuries consistent with an assault; that Derek had returned to the club; that Derek was drunk; and that Derek apparently had ignored Bryant's order to stay away from the club. Ms. Watson presents no material evidence suggesting that Bryant lacked cause to stop and arrest Derek.

We reach the same conclusion as to Bryant's use of his firearm. In addition to the above, Ms. Watson presents no evidence contradicting Bryant's consistent assertion that Derek refused to show his hands despite repeated requests to do so. Nor does she show that Bryant was unreasonable in believing that Derek could have had a weapon in his pockets. Ms. Watson points to no authority suggesting that an officer may not draw his weapon and keep it at the ready while dealing with an unsubdued arrestee who potentially retains access to a concealed weapon. *See Young*, 775 F.2d at 1353 ("[N]o right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts."); *cf. Culosi*, 596 F.3d at 201-02 (dismissing appeal of denial of qualified immunity in an accidental shooting case

because the record contained evidence—including eyewitness testimony, expert opinions, forensic evidence, and multiple material inconsistencies in the defendant's story—that raised genuine fact disputes on several issues material to the plaintiff's Fourth Amendment claim); *Russ v. Ratliff*, 538 F.2d 799, 804 (8th Cir. 1976) (reversing jury verdict for officer in an accidental shooting case where "no evidence" suggested that the officer should have drawn his weapon).

It is irrelevant that Bryant may have neglected to follow best practices by attempting to handcuff a suspect while holding a gun, however tragic the result. The failure to use "proper procedure" does not prove excessive force. *See Young*, 775 F.2d at 1352-53. We must evaluate the evidence as it bears on what an objectively reasonable officer would have done under the circumstances, and we must resist the temptation to use hindsight in that analysis. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008) (characterizing district court's criticism of officer's actions as an impermissible "*post hoc* evaluation"). However inadvisable Bryant's actions were, the evidence does not show that it was objectively unreasonable for an officer to fail to reholster his weapon in the midst of handcuffing a potentially armed suspect,[3] and we refuse to make such disarmament a constitutional requirement. Bryant thus is entitled to qualified immunity on Ms. Watson's Fourth Amendment claim.

Ms. Watson submits that, where the defendant is the only surviving witness, his account cannot support qualified immunity. We have examined

---

[3] It does not matter that Derek turned out to be unarmed. *See, e.g.*, *Manis*, 585 F.3d at 844-45; *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991) (reversing district court's denial of qualified immunity because officer reasonably believed that suspect could have accessed a weapon when reaching out of the officer's sightline; the fact that the suspect was unarmed was "irrelevant"); *see also Blossom v. Yarbrough*, 429 F.3d 963, 968 (10th Cir. 2005) ("The fact that [the suspect] was unarmed is not outcome determinative. We have previously rejected the argument that only a suspect armed with a deadly weapon poses a physical threat sufficient to justify the use of deadly force.").

No. 11-60699

such cases critically, but we have not relaxed the plaintiff's burden to introduce evidence that supports her position and that challenges the defendant's version of events. *See, e.g.*, *Hernandez v. Jarman*, 340 F.3d 617, 622 (8th Cir. 2003); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 492 (5th Cir. 2001) ("'In any self-defense case, a defendant knows that the only person likely to contradict him or her is beyond reach. So a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at trial.'" (emphasis removed) (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994))); *see also Ontiveros*, 564 F.3d at 383 (affirming qualified immunity for officer even though he was the only person with knowledge of "those events immediately surrounding the [fatal] shooting"). None of the evidence here calls into question any relevant aspect of Bryant's testimony,[4] which has been materially consistent from the time he filed his initial report through his deposition.[5]    *See Blossom*, 429 F.3d at 966 ("In

---

[4] The most on-point evidence does not contradict Bryant's testimony. Joshua McCaskill witnessed the arrest moments before the shooting, as he drove by with friends. McCaskill recalled that Bryant was on top of Derek, that Derek "looked like he had his handcuffs on," and that Derek was not "putting up [a] fight." Soon after this statement, however, McCaskill noted that Bryant was "rummaging around or whatever," actions consistent with Bryant's assertion that he had to remove Derek's right hand from his pocket.

[5] We are not persuaded that the inconsistencies highlighted by Ms. Watson bear on whether Bryant acted objectively unreasonably. Whether Bryant observed Williams's injuries on her face or neck, illuminated Derek in his spotlights or headlights, told Derek he was being arrested for assault or public drunkeness, heard Derek say that he had done nothing wrong, or was evasive in recalling years-old disciplinary incidents simply does not speak to whether he unreasonably believed that Derek could have had a weapon in his pocket.

Other arguments are similarly unavailing. It is speculative to surmise that Bryant knew that Derek was unarmed based on policies obligating dispatchers to get that information from Williams, and nothing suggests that Williams ever communicated such information. The record, moreover, lacks any forensic evidence concerning Derek's injury that disputes Bryant's description of how the shooting occurred, and no evidence ties the bruise found on Derek's head to the incident. In short, no dispute exists on the facts material to whether Bryant acted objectively unreasonably under the circumstances. *See Manis*, 585 F.3d at 844-45.

equating the [defendant's] refusal to admit [the veracity of the plaintiff's version of events] with the [plaintiff's] affirmative submission of conflicting evidence, the district court was plainly wrong."); *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37-40 (2d Cir. 2003) (affirming denial of qualified immunity where the plaintiff's allegations and evidence contradicted officer's version of events).  Ms. Watson "provide[s] no evidence to support [her] skepticism [of Bryant's story], and 'at the summary judgment stage we require evidence—not absolute proof, but not mere allegations either.'" *Ontiveros*, 564 F.3d at 383 (citation omitted).

## Conclusion

Accordingly, we REVERSE and REMAND for entry of partial summary judgment in Bryant's favor on his qualified-immunity defense to Ms. Watson's Fourth Amendment claim.  The Appellee's motion to dismiss for lack of jurisdiction is DENIED.