HAMILTON, Circuit Judge,
dissenting.
I respectfully dissent. This case presents an important issue about the extent of a pretrial detainee’s constitutional right to be free from punishment and excessive force. If a pretrial detainee can prove that a correctional officer used objectively unreasonable force against him, it should be self-evident that the detainee was “punished” without due process of law. In this case, however, the district court’s jury instruction on excessive force added an unnecessary and confusing element of “reckless” conduct or purpose to the required elements of plaintiffs claim.
The Committee on Pattern Civil Jury Instructions of the Seventh Circuit considered this question in 2009. The committee wisely omitted such language of recklessness or purpose from its Pattern Instructions 7.08 and 7.09 for excessive force claims by pretrial detainees. We should remand for a new trial with instructions tracking those pattern instructions. That way we could avoid the puzzle posed by *456 the majority opinion: When does the Constitution allow law enforcement and correctional officers to use objectively unreasonable force against a person not convicted of a crime?
I. The Problem: Excessive Force Claims by Pretrial Detainees
As the majority explains, when law enforcement officers apply physical force to suspects, detainees, or prisoners, the constitutional standard depends on the status of the person on the receiving end. A person who is not in custody and who is a target of police force, such as in an arrest or investigative stop, is protected by the Fourth Amendment’s prohibition on unreasonable seizures of the person. The Fourth Amendment standard is objective: was the application of force unreasonable in light of all the relevant circumstances confronting the officer at the time? Graham v. Connor, 490 U.S. 386, 395-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Federal Civil Jury Instructions of the Seventh Circuit No. 7.08 & 7.09. On the question of liability for a Fourth Amendment violation, the officer’s subjective purposes do not matter as long as the force was used intentionally rather than by accident. Graham, 490 U.S. at 397-99, 109 S.Ct. 1865.
A person convicted of a crime and serving a custodial sentence is protected by the Eighth Amendment’s prohibition on cruel and unusual punishment. The Eighth Amendment standard differs from the Fourth because the officer’s state of mind is critical. The plaintiff must prove that the correctional officer intentionally used extreme or excessive cruelty toward the plaintiff for the purpose of harming him, and not in a good faith effort to maintain or restore security or discipline. Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Federal Civil Jury Instructions of the Seventh Circuit No. 7.15. In Graham, the Supreme Court explained that the less protective Eighth Amendment standard applies “only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.” 490 U.S. at 398-99, 109 S.Ct. 1865, quoting Ingraham v. Wright, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).
Both the objective standard under the Fourth Amendment for free citizens and the subjective standard under the Eighth Amendment for sentenced prisoners are well established in the law. The person in between is the pretrial detainee. That person is protected from excessive force by the Due Process Clauses of the Fifth or Fourteenth Amendments because he may not be “punished” until he has been adjudged guilty through due process of law. Bell v. Wolfish, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Ingraham, 430 U.S. at 671 n. 40, 97 S.Ct. 1401. We have recognized that pretrial detainees receive more protection than convicted prisoners. E.g., Lewis v. Downey, 581 F.3d 467, 474 (7th Cir.2009).
Just what the excessive force standard for a pretrial detainee looks like in detail is not as clear. The detainee may often be held in a jail with convicted offenders under conditions that seem indistinguishable from prison, yet he has not been convicted and is still entitled to a presumption of innocence. The Supreme Court has not settled the question of the standard for pretrial detainees. Graham explicitly left it open. 490 U.S. at 395 n. 10, 109 S.Ct. 1865. Our circuit’s case law points in the direction of a standard identical or close to the objective Fourth Amendment standard, but there are conflicting signals in *457 our opinions that we should clarify here.[1]
My colleagues rely heavily on Wilson v. Williams, 83 F.3d 870 (7th Cir.1996), where a pretrial detainee claimed that he had been punished by the use of excessive force, but its guidance does not support the majority here. In Wilson we approved the portion of a jury instruction that tracked the objective Fourth Amendment standard. Id. at 876 (‘While this sentence, lifted verbatim from Graham ... was intended to apply to excessive force claims raised explicitly under the Fourth Amendment, we do not consider it, nor the test which it espouses, inappropriate in the context here.”). In other respects, though, the instruction given in Wilson was a confusing amalgam of Fourth Amendment, Eighth Amendment, and punitive damages law, along with a defense of subjective good faith that we said was erroneous. See id. at 877. We also noted that convicted prisoners and pretrial detainees are often held together in the same facility, so it might be impractical to have different standards, at least in the context of a jail disturbance. Id. at 876.
On this last point, though, recall the caution in Bell and Graham that the Eighth Amendment standard applies only after the state has complied with the constitutional protections needed to convict a person of crime. 441 U.S. at 535, 99 S.Ct. 1861, 490 U.S. at 398-99, 109 S.Ct. 1865. In light of Bell and Graham and their constitutional foundations, there is no apparent reason why a state’s unilateral decision to house pretrial detainees with convicted prisoners — for financial or other institutional reasons — should have the effect of reducing the constitutional protections of pretrial detainees who are still presumed innocent. The clearest thing about Wilson is that it reversed the use of the confusing amalgam of an instruction. It does not support the recklessness instruction given here.
More enlightening is Titran v. Ackman, 893 F.2d 145 (7th Cir.1990), where a pretrial detainee brought a claim for excessive force. We applied the objective reasonableness standard identical to the Fourth Amendment: “It does not follow [from the transition from arrest to detention] that officers acquired greater ability to assault and batter Titran.” Id. at 147. We explicitly rejected one defendant’s effort to apply a subjective standard, and we noted: “Multiple standards of official conduct send confusing signals that undermine the force of the law....” Id. Our holding was clear: “If the officers intentionally restrained, jolted, and roughed up Titran without physical provocation from her, their behavior was unreasonable.” Id. at 148. That looks like an objective standard.
*458 My colleagues make much of a sentence in Titran between the two I have quoted: “Given Daniels v. Williams and Archie v. City of Racine, holding that the Due Process Clause does not proscribe negligence or even gross negligence, the search for ‘punishment’ cannot be wholly objective.” Id. at 147 (citations omitted). As explained below, however, the point of Williams and Archie is only that the officer’s conduct must be intentional. Negligent accidents do not violate the Constitution. Neither decision added a subjective element of wrongful purpose into the excessive force standard for a pretrial detainee, nor did Titran do so. Nevertheless, I will cheerfully acknowledge that our few opinions on excessive force against pretrial detainees leave some room for debate. This case provides an opportunity to clarify the standard, but we are missing that opportunity.
II. The Pattern Jury Instructions
The Committee on Pattern Civil Jury Instructions of the Seventh Circuit took up this problem in 2009 and published with approval of the Circuit Council the pattern jury instructions that advise using the same objective reasonableness standards for excessive force claims by pretrial detainees as well as arrestees. The Circuit Council’s publication does not imply substantive approval for every line of the instructions, but the committee chaired by Judge Robert H. Miller, Jr., included talented judges and practitioners representing a range of perspectives, and the committee invited and received public comment on its draft instructions. The committee’s work deserves our respect and close attention.
Pattern Instructions 7.08 and 7.09 were drafted for use in excessive force cases for both arrestees under the Fourth Amendment and pretrial detainees under the Fifth and Fourteenth Amendments. The full texts of the instructions and committee comments are attached as an appendix to this opinion.
The elements instruction, 7.08, includes three elements:
1. Defendant used unreasonable force against Plaintiff;
[2. Because of Defendant’s unreasonable force, Plaintiff was harmed;]
[8. Defendant acted under color of law.]
The second and third elements are in brackets because there will often be no dispute about them and because it is not clear whether “harm” is a distinct element, as the committee’s comment explains.
Instruction 7.09 then explains what is meant by excessive or unreasonable force, and it does so in purely objective terms:
You must decide whether Defendant’s use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the arrest, not based on what you know now. In deciding whether Defendant’s use of force was unreasonable, you must not consider whether Defendant’s intentions were good or bad.
In performing his job, an officer can use force that is reasonably necessary under the circumstances.
The committee chose not to identify specific factors, but offered a proposed list for judges who believe such a list might aid a jury:
— the need for the use of force;
— the relationship between the need for the use of force and the amount of force used;
— the extent of the plaintiffs injury;
*459 — any efforts made by the defendant to temper or limit the amount of force;
— the severity of the crime at issue;
— the threat reasonably perceived by the officer(s);
— whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing.
These pattern instructions are more consistent with the applicable constitutional standard, see Graham, Titran, and Wilson, and much less confusing than the instruction used in this case. The problem is the concept of “recklessness” in the district court’s instruction.
III. The Instruction Given in This Trial
The jury instruction given in plaintiff Kingsley’s trial, quoted by the majority at pages 447-48, goes astray by introducing the concept of reckless conduct as an additional element the plaintiff must prove. The first line of the instruction given in this trial told the jury that excessive force is “force applied recklessly that is unreasonable in light of the facts and circumstances of the time.” In the Fourth Amendment context, excessive force is force that is unreasonable in light of the facts and circumstances the officer faced. Graham, 490 U.S. at 396-97, 109 S.Ct. 1865; Fitzgerald v. Santoro, 707 F.3d 725, 733 (7th Cir.2013); Phillips v. Community Ins. Corp., 678 F.3d 513, 519 (7th Cir.2012).
Assuming the pretrial detainee plaintiff can prove force “that is unreasonable in light of the facts and circumstances of the time,” which is the correct standard, the concept “recklessly” adds a vague and confusing extra hurdle for the plaintiff. Put another way, how and why would it be constitutional for an officer to use force against a pretrial detainee that was “unreasonable in light of the facts and circumstances of the time,” since this instruction invites that very possibility? How and why would-objectively unreasonable force be deemed anything other than “punishment” that would be imposed on the detainee without due process of law? See Bell, 441 U.S. at 535, 99 S.Ct. 1861 (“under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.”).
The instruction here also introduced a second version of recklessness in the third element, saying the plaintiff must show: “Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiffs safety by failing to take reasonable measures to minimize the risk of harm to plaintiff.” I am not at all sure what that means, and I don’t know how a juror should have interpreted it. Must the plaintiff come forward with evidence of reasonable measures that would have minimized the risk of harm? Would simply refraining from the alleged use of force — in this case, using a taser on an allegedly compliant prisoner, or refraining from smashing his head into a concrete bed — have been sufficient? Or was something else required? (I realize that whether the - plaintiff was actually compliant by that time and how force was used were hotly debated at trial, but jury instructions must guide the jury on the law applicable to both sides’ versions of the facts.)
Adding to the confusion, the same jury instruction then used a third version of recklessness, telling the jury: “in deciding whether one or more defendants used unreasonable force and acted with reckless disregard of plaintiff’s rights, you may consider such factors as....” A juror trying to follow the instructions carefully might ask at this point where the idea of reckless disregard of plaintiffs rights came from and what it means. Something different from use of excessive force? *460 Something different from the first two uses of recklessness? Does this instruction mean the defendant must have realized he was violating the detainee’s rights, or at least not cared whether he was doing so? Reckless disregard for the plaintiffs rights will support a punitive damage award, so that admittedly subjective concept is used in punitive damage instructions. See Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); Pattern Inst. No. 7.24. But reckless disregard of the plaintiffs rights is simply not an element of the plaintiffs core case for liability. It was an error to add it to the elements instruction.
So the district court’s instruction was erroneous for two reasons. First, it introduced an extra element — recklessness— that is simply not required in a pretrial detainee’s claim for excessive force. Second, its treatment of that extra element in three different ways made this instruction a confusing amalgam that a jury could not reasonably be expected to follow.
As we consider the district court’s instruction, we should also step back a moment from the details of the case law and ask whether and why a pretrial detainee’s claim for excessive force should differ at all from that of a person being arrested or stopped. The pretrial detainee is still cloaked in the presumption of innocence and may not be punished. Bell, 441 U.S. at 535, 99 S.Ct. 1861; see also Graham, 490 U.S. at 398-99, 109 S.Ct. 1865. Ordinarily, of course, a judge will have found probable cause to detain the person. If the detention is prolonged, a judge in the federal system ordinarily will have found either a risk of flight or a danger to the community. See 18 U.S.C. § 3142(e).
Even those federal detainees are still presumed innocent, though, and should not be subject to punishment before a conviction. And in many state justice systems, a pretrial detainee may remain in jail for weeks or even months simply because he cannot afford the premium for the presumptive bond set in his case. For those many thousands of people in the criminal justice system, we should recognize that the intentional use of objectively unreasonable force against them amounts to punishment without due process of law and violates the Constitution. They are not and should not be required to prove more in terms of reckless disregard for or intentional violation of their rights. The transition from arrest to pretrial detention does not give officers “greater ability to assault and batter” the detainees. Titran, 893 F.2d at 147.
IV. The Role of Intentional or Reckless Conduct
To support the subjective recklessness element in the district court’s instruction, my colleagues cite the case law holding that a plaintiff suing under 42 U.S.C. § 1983 for a constitutional violation must show intentional conduct. They then treat reckless conduct as a form of intentional conduct. See above at 13, citing Daniels v. Williams, 474 U.S. 327, 334, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir.1988) (en banc). That reasoning mistakenly combines two separate issues. The same confusion appeared in Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1094 (7th Cir.1986), and was repeated in Anderson v. Gutschenritter, 836 F.2d 346, 349 (7th Cir.1988), both also cited by the majority. The Pattern Instruction Committee carefully and correctly kept the two issues separate.
In Daniels the Supreme Court resolved a circuit split on whether negligent conduct can violate the individual rights guaranteed by the Constitution. The Court’s answer was no. In Daniels a jail inmate *461 claimed he had been deprived of liberty when he was injured by slipping on a pillow that an employee had negligently left on a staircase. The Court left such claims from accidental conduct to state tort law. 474 U.S. at 332, 106 S.Ct. 662. At the same time, the Court carefully drew the distinction that my colleagues overlook. In response to an argument that prison officials’ negligent failure to comply with procedural requirements in depriving a prisoner of good-time credit should be actionable, the Court explained: “We think the relevant action of the prison officials in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause.” Id. at 333-34, 106 S.Ct. 662. Applying the same distinction here, the focus should be on a deliberate decision to use force, not a negligent or reckless or intentional failure to comply with the constitutional standard for using force.
In the context of an excessive force claim, Daniels means that if, during the removal of Kingsley from his cell, the application of force was not intentional — the taser went off by accident, for example, or a guard slipped, fell, and knocked the handcuffed inmate down so that his head hit the floor — then there would have been no constitutional violation. Reckless conduct is generally recognized as equivalent to intentional conduct for these purposes, when it is equivalent to criminal recklessness, meaning that the actor is subjectively aware of the high risk of harm and then disregards it. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Slade v. Board of School Directors of City of Milwaukee, 702 F.3d 1027, 1029 (7th Cir.2012); see also Archie, 847 F.2d at 1219.
In an appropriate case, therefore, it could be appropriate to instruct a jury that if the defendant’s use of force was reckless (perhaps, for example, running through a crowd with a finger on the trigger of an unaimed gun), that would be sufficient to show intentional use of force. That would be an appropriate role for the concept of recklessness in an excessive force case. But there is no need for such an instruction unless the defense contends the use of force was unintended. The defense did not argue that here, so there was no need for a subjective element in the instruction.[2]
My colleagues’ reliance on the need for intentional conduct to justify the subjective recklessness elements of the instruction given here also proves too much. As explained above, intentional conduct is needed to show any constitutional violation, including the Fourth Amendment, where the standard for excessive force is objective. See County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (“liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process”), citing Daniels, 474 U.S. at 328, 106 S.Ct. 662; Brower v. County of Inyo, 489 U.S. 593, 596-97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (“seizure” requires “intentional acquisition of physical control” through “means intentionally applied”). That is why an accidental police shooting is not actionable under the Fourth Amendment, see Watson v. Bryant, 532 Fed.Appx. 453, 457 (5th Cir.2013); Pleasant v. Zamieski, 895 F.2d 272, 276-77 (6th Cir. *462 1990); Dodd v. City of Norwich, 827 F.2d 1, 7-8 (2d Cir.1987) (on reargument), but an intentional shot that accidentally hits the wrong person, is a seizure of that person that may be actionable under the Fourth Amendment, Fisher v. City of Memphis, 234 F.3d 312, 317-18 (6th Cir.2000).
The court in Fisher explained precisely the difference that my colleagues’ reasoning overlooks. After recognizing that a Fourth Amendment violation requires intent, not negligence, the Sixth Circuit explained: “However, the intent in question is the intent to commit the act, not the intent that a certain result be achieved. Therefore, Officer Taylor’s act of firing the gun was intentional, even if the result was not one he sought to achieve. Instructing the jury that more than negligence was required would likely confuse the jury as to the intent question.” Id. at 317. Again, because the defendants at this trial did not claim the use of force was accidental, there was no reason to introduce the concept of recklessness into the excessive force instruction.
Before closing, I should add that I have considerable sympathy for both this district judge and any other judge trying to distill our case law into a coherent elements instruction for a pretrial detainee’s excessive force claim. Some of the cases cited by the majority — especially Wilson— reflect similar confusion. But that is why the work of the Pattern Instruction Committee was so valuable. We should endorse their work, not reject it.
Finally, I agree with the majority that plaintiff Kingsley waived in the district court his challenge to the “harm” element of the court’s instruction on excessive force. As for the merits of that challenge, which the majority also addresses, I see no prejudicial error by including harm as an element. The Pattern Instruction Committee also confronted this issue as part of its Instruction 7.08 and could not come to a definitive conclusion. The committee’s comment gives good advice and leaves the choice to the sound judgment of the district court. In most excessive force cases, harm is likely to be so obvious that it does not require treatment as a separate element. (It will ordinarily be relevant in deciding whether the force applied was excessive or in deciding on an amount of damages.) If the defense argues that the force used was too minimal to violate the plaintiffs rights, the plaintiff should not be prejudiced if the district judge includes harm as an element but also instructs the jury, as the court did here, that pain can be harm for purposes of proving that element.
For these reasons, I would reverse the judgment of the district court and remand for a new trial with jury instructions that track Seventh Circuit Pattern Jury Instructions 7.08 and 7.09.
APPENDIX
7.08 FOURTH AMENDMENT/ FOURTEENTH AMENDMENT: EXCESSIVE FORCE AGAINST ARRESTEE OR PRETRIAL DETAINEE — ELEMENTS
In this case, Plaintiff claims that Defendant used excessive force against him. To succeed on this claim, Plaintiff must prove each of the following things by a preponderance of the evidence:
1. Defendant used unreasonable force against Plaintiff;
[2. Because of Defendant’s unreasonable force, Plaintiff was harmed;]
[3. Defendant acted under color of law.]
If you find that Plaintiff has proved each of these things by a preponderance of the *463 evidence, then you should find for Plaintiff, and go on to consider the question of damages.
If, on the other hand, you find that Plaintiff did not prove any one of these things by a preponderance of the evidence, then you should find for Defendant, and you will not consider the question of damages.
Committee Comments
a. Unreasonable Force: For authority regarding the “unreasonable force” element of the claim, see Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Deering v. Reich, 183 F.3d 645 (7th Cir.1999). Although Graham and Gamer are Fourth Amendment cases involving arres-tees, Wilson v. Williams, 83 F.3d 870, 876 (7th Cir.1996), states that the same standard applies to pretrial detainees. A separate instruction applies to cases involving convicted prisoners.
If the defendant contends that the application of force was accidental, the court may wish to break the first element into two:
1. Defendant intentionally used force against Plaintiff;
2. The force Defendant used was unreasonable;
b. Harm to Plaintiff: Although some other circuits include an element of “damage” in their pattern instruction, see, e.g., Eighth CIRCUIT Manual of Model Civil Jury Instructions § 4.30 (1999), the Committee believes that there is significant doubt as to whether damage, or “harm” as that term is commonly understood, is actually required for a finding of liability under § 1983. Though “harm” in the commonly-understood sense is likely to exist in most excessive force cases, some cases will arise in which it does not, e.g., a situation in which an officer strikes the plaintiff with his hand but leaves no mark and causes no lingering injury or pain. In such cases, the court will need to determine whether the jury should be instructed on this point.
In Gumz v. Morrissette, 772 F.2d 1395, 1400 (7th Cir.1985), the court held that an officer’s use of force was unconstitutional if it (1) caused severe injuries; (2) was grossly disproportionate to the need for action under the circumstances; and (3) was inspired by malice or shocked the conscience. Gumz, however, was overruled by Lester v. City of Chicago, 830 F.2d 706 (7th Cir.1987), which used the same “totality of the circumstances test” that was later adopted by the Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In Lanigan v. Village of East Hazel Crest, Illinois, 110 F.3d 467 (7th Cir.1997), the court upheld a claim based on force consisting of “one violent push and poke,” noting that the plaintiff “need not have been injured to have an excessive force claim.” Id. at 470 n. 3. In McNair v. Coffey, 279 F.3d 463 (7th Cir.2002), the court addressed a claim arising from an incident in which no physical force was used, but officers pointed their weapons at the plaintiffs. Though it determined that the officers were entitled to qualified immunity, and indicated that the Fourth Amendment appeared to require some use of force, id. at 467, the majority ended its opinion with the statement “we do not foreclose the possibility that the circumstances of an arrest could become ‘unreasonable’ without the application of physical force.” Id. at 468. See also Herzog v. Village of Winnetka, Ill., 309 F.3d 1041, 1043 (7th Cir.2002) (refusal to loosen chafing handcuffs or shoving an arrestee would constitute actionable excessive force).
*464 Even if, as McNair indicates, an application of force is required in order to implicate the Fourth Amendment, it is not at all clear that the plaintiff must suffer “harm” in order to obtain a finding of liability; the availability of nominal damages in excessive force cases suggests that “harm” is not a requirement. See, e.g., Briggs v. Marshall, 93 F.3d 355, 360 (7th Cir.1996) (indicating that nominal damages may be awarded in a Fourth Amendment excessive force case where no injury resulted from the use of excessive force, where the evidence of actual injury is not credible, or where the injury has no monetary value). Because the issue of whether a plaintiff must prove “harm” is not definitively resolved, the Committee placed the second element in brackets, indicating that a court should give this part of the instruction to the jury at its discretion.
c. Third element: The third element should be eliminated if the “color of law” issue is not in dispute.
d. Single Element Instruction: If the second and third elements are eliminated, only one element will remain, and the instruction’s second sentence should read as follows: “To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that Defendant used unreasonable force against him.”
7.09 FOURTH AMENDMENT/ FOURTEENTH AMENDMENT: EXCESSIVE FORCE-DEFINITION OF “UNREASONABLE”
You must decide whether Defendant’s use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced. You must make this decision based on what the officer knew at the time of the arrest, not based on what you know now. In deciding whether Defendant’s use of force was unreasonable, you must not consider whether Defendant’s intentions were good or bad.
In performing his job, an officer can use force that is reasonably necessary under the circumstances.
[An officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect’s actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm. [It is not necessary that this danger actually existed.] [An officer is not required to use all practical alternatives to avoid a situation where deadly force is justified.]]
Committee Comments
a. Authority: Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Deering v. Reich, 183 F.3d 645 (7th Cir.1999).
b. Factors: Case law establishes a number of factors that may be relevant to the jury’s determination of whether a particular use of force was unreasonable. The Committee did not list these factors in the instruction because the jury is to consider all circumstances, and the listing of some might suggest that others are irrelevant. However, a court may wish to consider giving a list of factors for the jury’s consideration, and if it elects to do so the following is proposed:
— the need for the use of force;
— the relationship between the need for the use of force and the amount of force used;
— the extent of the plaintiffs injury;
— any efforts made by the defendant to temper or limit the amount of force;
*465 — the severity of the crime at issue;
— the threat reasonably perceived by the officer(s);
— whether the plaintiff was actively resisting arrest or was attempting to evade arrest by fleeing.
See Graham v. Connor, 490 U.S. at 396, 109 S.Ct. 1865 (fifth, sixth, and seventh factors). In Wilson v. Williams, 83 F.3d 870 (7th Cir.1996), a Fourteenth Amendment excessive force case involving a pretrial detainee, the Seventh Circuit listed factors one, two, three, four, and six from the above list, and stated that they are “generally relied on in the Fourth Amendment excessive force context.” Id. at 876. For this proposition, however, the court cited Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), which was an Eighth Amendment case, not a Fourth Amendment case. See generally Eighth Circuit Manual of Model Jury Instructions (Civil) 4.10 (1999) (using factors one, two, and three).
c. Deadly Force: The final (bracketed) paragraph applies only in cases involving an officer’s use of deadly force. Tennessee v. Garner, 471 U.S. 1, 11-12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir.1988). With regard to the final (bracketed) sentence of this paragraph, see Deering v. Reich, 183 F.3d 645, 652-653 (7th Cir.1999); Plakas v. Drinski, 19 F.3d 1143, 1148 (7th Cir.1994). The fact that a particularized instruction is proposed for deadly force cases does not preclude the consideration or giving of a particularized instruction in other types of cases, for example, those involving a fleeing felon or an officer’s claim of self-defense.

. There is a long-standing circuit split on the substantive standard for these excessive force claims by pretrial detainees. Compare, e.g., Gibson v. County of Washoe, 290 F.3d 1175, 1197 (9th Cir.2002) (applying objective Fourth Amendment standard); and Pierce v. Multnomah County, 76 F.3d 1032, 1042-43 (9th Cir.1996) (reversing defense verdict and ordering new trial with jury instructions using objective Fourth Amendment standard); with Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir.2005) (applying Eighth Amendment standard); and Fuentes v. Wagner, 206 F.3d 335, 346-48 (3d Cir.2000) (applying Eighth Amendment standard to use of force to quell jail disturbance); see generally Karen M. Blum & John J. Ryan, Recent Developments in the Use of Excessive Force by Law Enforcement, 24 Touro L.Rev. 569, 573 (2008) (standards “vary widely”); Baker, Wilson v. Spain: Will Pretrial Detainees Escape the Constitutional “Twilight Zone”?, 75 St. John’s L.Rev. 449 (2001). Because of the effect of qualified immunity in litigation of these claims, I respectfully submit that our court and/or the Supreme Court needs to bring greater clarity to this question for the sake of both detainees and law enforcement and correctional personnel.

. Section 1983 and Bivens excessive force cases in which defendants contend the application of force was accidental appear to be relatively unusual/ but they do arise. The Pattern Instruction Committee allowed for them. Its comment on Instruction 7.08 advises judges in such cases to break the first element of unreasonable force into two parts: intentional use of force and unreasonable use of force.