# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2020

Lyle W. Cayce
Clerk

No. 19-11284
Summary Calendar

ALICIA BRYANT, in Her Capacity as the Personal Representative of the Estate of Jonathan Bryant,

Plaintiff - Appellant

v.

DANNY GILLEM,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, JONES, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The personal representative of the estate of the original plaintiff, who is now deceased for reasons unrelated to this incident, brought suit against the law enforcement officer whose shooting of the plaintiff during an arrest was, according to the evidence in this record, accidental. The district court granted summary judgment based on a defense of qualified immunity. We AFFIRM.

No. 19-11284

## FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2016, a district attorney investigator, Mike Chapman, determined from radar that a Ford Explorer was being driven at 45 m.p.h. in a 35-m.p.h. zone on U.S. Highway 287 in Childress, Texas. Plaintiff-decedent Jonathan Bryant was the driver, and he had a passenger. Chapman activated his patrol car's emergency lighting to initiate a traffic stop, but Bryant accelerated. Chapman pursued, notifying the Childress County Sheriff's Office and requesting assistance. Chief Deputy Sheriff Danny Gillem of the Childress County Sheriff's Office responded to Chapman's request and joined the chase.

Chapman's dash camera recorded the chase and the subsequent arrest. The high-speed chase lasted approximately 14 minutes. At one point, Chapman estimated Bryant was traveling at over 115 m.p.h. The video depicts events of Bryant's swerving in and out of traffic. His recklessness caused other motorists to swerve and some to drive off the road. Chapman considered this driving to be so dangerous to the public that he used his Glock pistol to fire into Bryant's vehicle four different times, with approximately 19 rounds discharged. After the fourth time, Bryant slammed on his brakes and began driving off the right side of the highway. Chapman rammed into the rear of Bryant's vehicle, forcing it off the road into knee-high grass.

Bryant and a passenger exited the vehicle with their hands raised and then laid on the ground in compliance with the officers' commands to do so. Chapman appeared on video holding his pistol in both hands, and he walked to the passenger side of the vehicle to secure the passenger. Another officer also had his firearm drawn.

At one point in the video, Deputy Gillem walks into view of Chapman's dash camera. As he approached Bryant, who was still on the ground in the grass, Gillem held his pistol with both hands and pointed it at Bryant. Bryant immediately put both hands in the air, then placed them on his back. Gillem

2

then put his pistol into his left hand, knelt alongside Bryant, and drove his right knee into Bryant's back. Still holding the firearm with his left hand and reaching with his right for Bryant's hands, Gillem fired his pistol into Bryant's left shoulder — accidentally, Gillem claims. Only five seconds elapsed from Gillem's coming into the view of the camera and the shooting.

After shooting Bryant, Gillem immediately holstered the weapon and requested medical assistance. At this point in Gillem's dash-camera video, Gillem yelled, "Hey, get me an ambulance! He's shot. I shot him. Get an ambulance. Shot him in the arm. Get an ambulance." Gillem also made statements such as, "I'm not going to let you die," and "I messed up. I messed up. I had him on the ground, and I went and got his arm, and as soon as I did, 'pow!'"

Later that day, Texas Ranger Ricky Brown began a criminal investigation of the shooting. Brown's written report included written statements by Gillem and Chapman, as well as written summaries of radio transmissions and video footage of the incident. Chapman stated that after he heard the gunshot, he went to Gillem, who said "he accidentally shot [Bryant] while he was attempting to arrest him." Gillem also stated that after "I grabbed his arm and moved it behind his back I discharged my firearm which was in my left hand and struck the violator in the left shoulder area." Brown closed the investigation after a grand jury failed to indict Gillem.

Brown and Gillem were both deposed. On direct examination, Brown testified he believed Gillem's pulling the trigger was reflexive and accidental. On cross examination, Brown acknowledged that Gillem did not follow his training to holster his gun before attempting to secure a suspect and did not follow his training to keep his finger away from the trigger when there was no intention to discharge the firearm.

3

No. 19-11284

According to Gillem's deposition testimony, Gillem: (1) could not see Bryant's hands when Gillem first approached because Bryant was lying in tall grass; (2) thought he had holstered his gun before attempting to secure Bryant; (3) did not intend to fire his weapon; and (4) accidentally shot Bryant. Gillem acknowledged having received training about holstering his weapon and trigger safety. He admitted to making a mistake.

Gillem signed a declaration stating, "I did not intend to discharge my weapon at any time and did not even realize I was holding the gun in my left hand as I kneeled down and accidentally discharged the gun." Another declaration was submitted in which Margo Frasier, the former Sheriff of Travis County, Texas, stated her opinion as a putative expert that Gillem's actions were objectively reasonable.

Bryant brought suit under 42 U.S.C. § 1983 against Gillem and other now-dismissed parties, alleging a violation of his Fourth Amendment rights. On August 2, 2018, Bryant was murdered in Orlando, Florida. On November 13, the district court allowed substitution of Alicia Bryant, in her capacity as the personal representative of the estate of Jonathan Bryant. *See* FED R. CIV. P. 25. We will refer to the substituted representative also just as Bryant. The operative complaint brought one claim against only Gillem for violation of the Fourth Amendment.

Gillem moved for summary judgment based on a defense of qualified immunity. The district court granted the motion and dismissed the case with prejudice. Bryant timely appealed.

DISCUSSION

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th

Cir. 2013).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A grant of qualified immunity is also reviewed *de novo.*  *Bishop v. Arcuri,* 674 F.3d 456, 460 (5th Cir. 2012).

Bryant presents two claims of error.  The first is that certain opinion evidence should not have been admitted or considered as to why Gillem might have accidentally fired his weapon.  Secondly, Bryant claims that the district court committed legal error in the manner in which it analyzed qualified immunity.  We address these arguments in that order.

## I.    *Admissibility of opinion evidence that the shooting was accidental*

We start with the opinion evidence.  Bryant argues the district court erred in relying on Texas Ranger Brown's opinion that Gillem unintentionally shot Bryant.  Specifically, Bryant says no record evidence supports Brown's opinion about Gillem's mental state or that an uncontrollable reflex would have physically caused Gillem to pull the trigger accidentally.  Bryant also contends the district court mischaracterized Brown's investigation, though the point is only that the court erroneously referred to interviews with Chapman and Gillem instead of accurately referring to written statements.

We emphasize the significance of intent.  Unless the evidence supports that a defendant acted willfully when violating someone's federal rights, there is no liability under Section 1983.  *Gorman v. Sharp,* 892 F.3d 172, 174 (5th Cir. 2018).  As to the opinion evidence in this case, the district court held that Bryant's objection was in part moot inasmuch as the court was not relying on the witness's explanation of what might have caused Gillem to fire his weapon accidentally.  The district court did, though, consider Brown's opinion that the shooting was an accident.  The court found Brown to be qualified to give that

opinion based on his experience investigating police shootings.  There was no error in that finding.

## II.    *Qualified immunity*

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing the defense does not apply.  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  The plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotation marks omitted).

We first consider whether Gillem violated Bryant's Fourth Amendment rights.  Bryant argues the district court erred in basing its ruling on Gillem's intentions at the moment the firearm discharged rather than on the reasonableness of Gillem's conduct immediately prior to that time.  Bryant also claims there is a material fact dispute as to whether Gillem's shooting of Bryant was accidental, which makes the grant of summary judgment reversible error.

The district court found that Bryant "failed to present any competent summary judgment evidence reasonably showing that Gillem's failure to holster his firearm and his discharge of the firearm were intentional acts."  We highlight that there are two events in that finding that there was no intent, one being the failure to holster the weapon and the other being the pulling of the trigger.  We will return to those distinct events later.  The district court considered Chapman's dash-camera video, Brown's and Frasier's opinions,

No. 19-11284

Gillem's declarations and deposition testimony, and Chapman's written statements in the investigation report. The court determined "that a reasonable jury could only find on this record that Gillem did not intend to keep his firearm drawn when attempting to handcuff Bryant, and did not intend to discharge his firearm."

We earlier mentioned and now reiterate that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989).

There is no evidence that Gillem intended to shoot Bryant, and indeed, there is overwhelming evidence that he did not. Bryant argues otherwise, but we reject the argument based on this record. What needs further attention, though, is the effect of the evidence about Gillem's failure to holster his firearm as he was attempting to handcuff Bryant. Bryant contends that if Gillem acted unreasonably prior to the accidental shooting by intentionally failing to holster his weapon, that intentional act can be the basis for liability under Section 1983. A nonprecedential opinion of this court dealt with that factual situation, stating that even if an officer's shooting of a suspect is accidental, there may be a constitutional violation if the officer "acted objectively unreasonably by deciding to make an arrest, by drawing his pistol, or by not holstering it before attempting to handcuff" the suspect. *Watson v. Bryant*, 532 F. App'x 453, 457–58 (5th Cir. 2013). In that opinion, the court was addressing a situation in which the officer intentionally kept his weapon in one hand while handcuffing with the other despite his training not to do so, because of concerns the suspect had his own weapon. *Id.* at 455. No such concerns are involved here.

The district court here found no "competent summary judgment evidence reasonably showing that Gillem's failure to holster his firearm and his

discharge of the firearm were intentional acts." We look to the validity of that finding. There is not much in the record directly relevant to Bryant's possible intent to keep his weapon drawn. We conclude the district court properly summarized what is in the record:

> After Gillem shot Bryant, he immediately pointed the pistol away from him. Gillem subsequently holstered the pistol on the right side of his hip and requested assistance. . . . At deposition, Gillem stated that he thought he had holstered his gun prior to attempting to secure Bryant, that he did not intend to pull the trigger of his firearm, and that he accidentally shot Bryant. Consistent with his deposition testimony, Gillem subsequently filed a declaration in which he declared that "[t]he discharge was purely an accident," that "[he] did not intend to discharge [his] weapon at any time," and that "[he] did not even realize [he] was holding the gun in [his] left hand as [he] kneeled down and accidentally discharged the gun."

Taking this to be the entirety of the relevant evidence, as we must on summary judgment, *Topalian v. Ehrman*, 954 F.2d 1125, 1131 n.10 (5th Cir. 1992), we conclude that there is no fact dispute that Gillem unintentionally kept his firearm in his hand as he sought to restrain Bryant. Any finding by jurors to the contrary would only be "unsupported speculation." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Because Bryant has failed to show a violation of any Fourth Amendment rights, we need not consider the second qualified-immunity prong.

AFFIRMED.