NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0551n.06
Filed: June 24, 2005

No. 04-3821
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONNIE STEWART, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF MIDDLETOWN, *et al.,* | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendants-Appellees. | ) | |

BEFORE: CLAY and SUTTON, Circuit Judges; O'MEARA, District Judge.[*]

**JOHN CORBETT O'MEARA, District Judge.** Plaintiff-Appellant Ronnie Stewart

appeals the district court's order granting Defendants-Appellees' motion for summary judgment.

The district court held as a matter of law that a police officer shot in the eye by another officer

during a training exercise had not been "seized" or subject to restraint within the meaning of the

Fourth Amendment for purposes of a constitutional violation under 42 U.S.C. § 1983. We agree.

**I.**

Appellee City of Middletown incorporated the Firearms Training Simulator ("FATS")

system into its police department's ongoing officer training in 1998. Through the FATS system,

officers reacted to filmed scenarios and determined whether their use of firearms was warranted

based on available on-screen contextual information and established police protocol. Prior to the

year 2000, the system could not return fire at a trainee with a laser beam or otherwise. However,

---

[*]The Honorable John Corbett O'Meara, United States District Court for the Eastern District
of Michigan, sitting by designation.

in 2000 the system became available with a return-fire component, making the training scenarios more lifelike. When projected images "shot" at an officer, the return-fire system allowed the operator, another police officer, to aim and fire a rubber bullet from a carbon dioxide gun at the trainee.

During the fall of 2000, the City of Middletown purchased a one-week rental of the FATS system with return-fire component. To maximize the city's investment, the police department operated the system 24 hours each day. Lieutenant George Jeffery, a Middletown police officer, volunteered to be trained to instruct other officers. The parties dispute whether Lt. Jeffery told Officer Stewart to wear safety glasses during the training session and whether Officer Stewart actually began the session wearing safety glasses. Ultimately, however, Lt. Jeffery fired either a rubber bullet or a foam ball at Officer Stewart, striking him and permanently injuring Stewart's eye. There is no evidence that Lt. Jeffery intended to harm Officer Stewart. It was an accident.

In his lawsuit against Lt. Jeffery and the City of Middletown, Officer Stewart alleged a violation of 42 U.S.C. § 1983, asserting that Lt. Jeffery's injury to Stewart's eye constituted an illegal seizure under the Fourth Amendment. The district court held that Officer Stewart was not "unlawfully seized" within the meaning of the Fourth Amendment because "the facts presented here are not remotely similar to cases alleging Fourth Amendment violations based on a police officer's use of excessive force, as in *Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975)."

**II.**

The court reviews *de novo* a district court's decision to grant summary judgment. *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002).

**III.**

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege and prove the following two elements: 1) that he was deprived of a right secured by the United States Constitution or laws of the United States, and 2) that the deprivation was caused by a person while acting under color of state law. *Haines v. Saginaw Police Dept.*, 35 F.3d 565 (6th Cir. 1994) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978)). The first element is the threshold requirement of a Section 1983 action. As we have cautioned before, "Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Lewellen v. Metropolitan Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994).

In this case Officer Stewart alleges a violation of his Fourth Amendment right to be free from unreasonable seizure. To establish a claim for unreasonable seizure, a plaintiff must show that a seizure actually occurred and that the seizure was unreasonable under the circumstances. *Brower v. County of Inyo*, 489 U.S. 593 (1989). A "seizure" has occurred only when an "'officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)(quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Further, a person has been "seized" for Fourth Amendment purposes "'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Id.*(quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). This test is designed to ascertain the overall coercive nature of the police conduct involved, which is the focus of Fourth Amendment violations. *Id.*

In *Brower*, *supra*, the Supreme Court discussed the meaning of "seizure" and clarified that in order for a seizure to occur, the detention or taking must be willful; seizure cannot be applied to an unknowing act. 489 U.S. at 596. "The writs of assistance that were the principal grievance against which the Fourth Amendment was directed did not involve unintended consequences of government action." *Id*. In this case there is no evidence to show that either the City of Middletown or Lt. Jeffery intended to seize Officer Stewart; rather, his eye injury was the unintended consequence of government action.

Appellant Stewart relies on *Jensen v. City of Oxnard*, 145 F.3d 1078 (9th Cir.), *cert. denied*, 525 U.S. 1016 (1998), in which an on-duty police officer was shot and killed by another officer during a SWAT team raid. In addition to general allegations of failure to train, the complaint alleged that the city failed to control SWAT team members with a propensity for violence and failed to investigate SWAT team members for substance abuse and/or mental problems. *Id*. at 1083. The court affirmed the denial of a motion to dismiss the claims based on Section 1983 and noted that police officers do not forfeit constitutional rights when they become members of the police force.

In this case, however, Officer Stewart has alleged that his injury was a "direct and proximate result of the callous indifference and reckless disregard of Lieutenant Jeffery" for failing to warn or protect Stewart. The complaint does not allege that Lt. Jeffery's actions were intentional, and Officer Stewart has no evidence to show that Lt. Jeffery's actions were anything but negligent. It is now "firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest." *Lewellen*, 34 F.3d at 348.

Appellant Stewart was not "seized" or subjected to restraint within the meaning of the Fourth Amendment for purposes of a constitutional violation pursuant to 42 U.S.C. § 1983 when he was accidentally injured during a training session. To find otherwise would subject governmental entities to liability under Section 1983 virtually every time a state employee is injured in the workplace. This we will not do.

Finally, because there was no constitutional violation by Lt. Jeffery, defendant City of Middletown was also entitled to summary judgment.

**IV.**

For the aforementioned reasons, we **AFFIRM** the district court's order granting Defendants-Appellees' motion for summary judgment.