**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 16-1523**

───────────────

RAYMOND GRAY, by Carolyn Gray, Guardian of the Person and Property of Raymond Gray; SHERI GRAY,

        Plaintiffs – Appellants,

    and

CAROLYN GRAY, Guardian of the Person and Property of Raymond Gray,

        Plaintiff,

      v.

OFFICER WILLIAM SCOTT KERN, Individually and in his official capacity; MAJ. ERIC RUSSELL, Individually and in his official capacity; OFFICER EFREN EDWARDS, Individually and in his official capacity; COMMISSIONER ANTHONY BATTS, Individually and in his official capacity; BALTIMORE POLICE DEPARTMENT,

        Defendants – Appellees,

    and

BALTIMORE COUNTY, MD; BALTIMORE COUNTY POLICE DEPARTMENT/BALTIMORE COUNTY; MAYOR AND CITY COUNCIL OF BALTIMORE CITY,

        Defendants.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:13-cv-02270-WMN)

───────────────

Argued: March 23, 2017                          Decided: July 27, 2017

---

Before NIEMEYER, KING, and WYNN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Allan B. Rabineau, LAW OFFICES OF ALLAN B. RABINEAU, Baltimore, Maryland, for Appellants. Colin Patrick Glynn, BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland, for Appellees. **ON BRIEF:** A. Dwight Pettit, LAW OFFICES OF A. DWIGHT PETTIT, P.A., Baltimore, Maryland, for Appellants. David E. Ralph, City Solicitor, Kara Lynch, Assistant City Solicitor, Ashley McFarland, Assistant City Solicitor, BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

While being trained by the Baltimore Police Department in 2013, Raymond Gray was shot in the head and grievously wounded by Officer William Scott Kern, one of the Department's officers teaching the training course. In this appeal, Gray and his wife seek the reinstatement of state and federal claims against Officer Kern, Officer Efren Edwards, Major Eric Russell, Commissioner Anthony Batts, and the Department itself. As explained below, we affirm the district court's judgment in part, vacate in part, and remand for further proceedings.

I.

A.

The dilapidated buildings of the Rosewood Center, established on the outskirts of Baltimore in 1888 as the Maryland Asylum and Training School for the Feeble Minded, have largely gone unused since the Center closed in 2009. On February 12, 2013, however, the Rosewood campus was being utilized for tactical training courses conducted by the Baltimore Police Department for its own recruits and recruits of other nearby police agencies, totalling about twenty trainees. That day, Raymond Gray — then forty-three years old and a trainee with the University of Maryland Police Department — was participating in the training courses. A duo of Officers Kern and Edwards was teaching the courses. No other official of the Baltimore Police Department was then present at Rosewood, including Commissioner Batts and Major Russell, the Department's director of education and training.

3

The tactical training courses involved the use of Simunition weapons, i.e., copies of the service weapons (Glock 22 pistols) issued to Baltimore police officers. The Simunition weapons fire only non-lethal paintball-like rounds and are almost entirely blue, distinguishing them visually from the deadly, all-black service weapons generally used by Baltimore's officers. Nevertheless, the blue Simunition weapons feel nearly identical to the black service weapons. Because of the dangers that would be posed in tactical training courses by live weapons — including the risk that they would be confused with Simunition weapons or otherwise accidentally discharged — no live weapons are permitted to be carried during tactical training or even to be present in the physical location where such training is being conducted. That prohibition is spelled out in both Simunition instructional materials and Baltimore Police Department rules and regulations.

Despite the prohibition against live weapons, Officer Kern was carrying his loaded black service weapon during the tactical training courses being conducted at the Rosewood campus on February 12, 2013. By then, he and Officer Edwards had periodically worked together teaching tactical training courses for nearly ten years. Kern had a total of approximately nineteen years of police service, and Edwards more than twenty-five. That day's training courses were their first at Rosewood, where they planned to continue working with trainees for the next three days. After lunch, Edwards taught room clearing and hallway observation to a group of trainees in the upper east side of a Rosewood building, and Kern conducted bunker training with the other trainees two floors below in a gymnasium on the same building's lower west side. Kern worked with

4

his trainees a few at a time, and the remainder of the trainees waited in a hallway outside the gymnasium.

While Gray was among the trainees waiting for bunker training, he peered through a window in a closed wooden door between the hallway where he was standing and the gymnasium. Contemporaneously, Officer Kern removed his live black service weapon from its holster, took aim at the door, and fired, propelling a bullet through the window glass and shooting Gray in the head.

According to Officer Edwards, Officer Kern then ran upstairs to Edwards to report that "I shot somebody" and "shot him with my gun." *See* J.A. 272.[1] On their way back downstairs, Edwards asked Kern, "What the f\*\*k were you doing with a gun in the building?" *Id.* at 274. Kern responded, "That's not important right now." *Id.* Kern also failed to offer Edwards any explanation as to why Kern had fired at Gray. Edwards asked Kern several times for his loaded service weapon, but Kern refused to give the weapon to Edwards.

## B.

As a result of the shooting by Officer Kern, Raymond Gray suffered permanent brain damage and has been estimated to require more than $7 million in round-the-clock care over the remainder of his life. The shooting resulted in this civil action, as well as state criminal charges against Kern.

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

5

At his criminal trial, Officer Kern testified that he intended to fire his blue Simunition weapon — not his black service weapon — in the direction of Gray. His purpose, Kern asserted, was to teach the trainees to avoid "fatal funnels," e.g., doorways, hallways, stairways, and windows that "are the biggest areas that police get killed in." *See* J.A. 123-24. Kern explained that he "saw individuals walking back and forth in the hallway in front of the door," and that he only "intended to withdraw [his Simunition] weapon and fire one round at the door," to "remind them that that is an area in which you do not need to be." *Id.* According to Kern, firing the Simunition weapon at the door would have posed "no risks whatsoever," because a round from the Simunition weapon "has no capabilities of penetrating anything like that." *Id.* at 124.

Officer Kern further testified at trial, however, that the "distinctive sound" of the firing made him realize immediately that he had fired his service weapon, rather than his Simunition weapon. *See* J.A. 125. Kern admitted carrying his loaded black service weapon in a holster at his right-side waist, while his blue Simunition weapon was tucked nearby in his right pants pocket. Kern claimed he was armed with his live service weapon by agreement with Officer Edwards out of concern that the Rosewood building in which they were conducting that day's training courses "wasn't a secure facility like we had used in the past." *Id.* at 112; *see also id.* at 114 (Kern's testimony that he and Edwards agreed that Kern "would be the one, for the first two days [at the Rosewood

6

campus], to remain armed," and that Edwards "would be the one for the second two days to remain armed").[2]

At depositions conducted in these proceedings, Officer Kern similarly testified, again stating that he had been armed with his live service weapon by agreement with Officer Edwards and "accident[al]ly withdrew the wrong weapon" before shooting Gray. *See* J.A. 139, 166-67. Kern's account was disputed, however, by Edwards.

First of all — consistent with his description of being surprised and bewildered in the immediate wake of the shooting by the fact that Officer Kern had been carrying his live service weapon — Officer Edwards testified at deposition that he never discussed or agreed with Kern that one of them would be armed with a loaded service weapon during the training courses at the Rosewood campus. Edwards elaborated that, if he had known Kern was carrying a live weapon, he "would have asked [Kern] to take it off" and "would have suspended the training" upon Kern's refusal to do so. *See* J.A. 250. Edwards also described the precautions he took prior to both the morning and afternoon training sessions on the day that Gray was shot: At his vehicle, Edwards unloaded his service weapon, placed the ammunition in the vehicle's glove box, put the weapon in a safety lock bag, stowed the bag in the vehicle's trunk, and locked the vehicle. That morning, Edwards even asked Kern if he had performed a standard "weapons check," and Kern

---

[2] In October 2013, in the Circuit Court for Baltimore County, a jury found Officer Kern guilty of reckless endangerment and acquitted him of second degree assault. He was sentenced to eighteen months of incarceration, with all but sixty days suspended, plus two years of supervised probation. *See Kern v. State*, No. 2443 (Md. Ct. Spec. App. July 11, 2016) (affirming criminal judgment), *cert. denied*, 147 A.3d 402 (Md. 2016).

responded in the affirmative. *Id.* at 257. Just before the lunch break, Edwards advised Kern that "if he was going to allow any of the trainees to leave the Rosewood reservation, to ensure that he did a weapons check when they came back." *Id.* at 258. Thereafter, Edwards confirmed with Kern that he had performed the post-lunch weapons check. Edwards stated that he had never known Kern or any other officer to carry a live weapon during a tactical training course, that he considered the Rosewood campus to be sufficiently secure, and that Kern had not expressed to him any concern that Rosewood was unsafe.

Additionally, with respect to Officer Kern's claim that he fired at Gray to teach the trainees a safety lesson about fatal funnels, Officer Edwards emphasized that instructors "don't fire [Simunition] weapons, and definitely not live weapons, in the direction of a trainee to teach anyone any lessons." *See* J.A. 279. At the time of the shooting, Kern was not even teaching a course related to fatal funnels; rather, he was conducting bunker training. Moreover, Edwards explained that when Simunition weapons are properly employed "in the process of actual scenario-based training," they are fired only at participants in full protective gear — which Gray was not. *Id.*

During his deposition, Officer Edwards addressed a separate incident that had occurred earlier the very day that Officer Kern shot Gray, but that Edwards learned about only later. In that incident, which happened during another training session led by Kern at the Rosewood campus, Kern pointed his live service weapon at a trainee — a trainee who has been identified as Gray. Kern's later account of the incident was that he intentionally withdrew the loaded service weapon in response to a trainee's inquiry and in

8

furtherance of the training mission. But trainees present for the incident described it differently, saying that an alarmed trainee alerted Kern that he had pulled his service weapon and that Kern then indicated the incident was inadvertent. According to the witnesses, a trainee "recognized [the black service weapon] not to be a [Simunition] weapon" and "advised Officer Kern immediately that [Kern] had a live weapon on his person" and "that that is a safety violation." *See* J.A. 299. Kern responded that he had pulled the service weapon because of "muscle memory." *Id.* Edwards deemed Kern's response to the trainees to be unsatisfactory, in that it did "not abate the fact that [Kern had] a live weapon in a [Simunition] training scenario. That should have been enough for him to take that weapon off. He did not." *Id.*

Officer Edwards also testified that he believes Gray's shooting was intentional, rather than accidental, and that Officer Kern, who is white, may have acted out of racial animus toward Gray, who is black. Edwards explained that Kern "was the type of instructor who refused to follow directions," and that Kern had been "reprimanded on several occasions by several supervisors" and recommended for removal as an instructor. *See* J.A. 293. According to Edwards, Kern demonstrated "dislike to a particular group of trainees, particular[ly] African-American males, with each one of the classes that he instructed," and African-American trainees had complained to Edwards and other instructors "about the abusive manner" in which Kern treated those trainees. *Id.* at 293-94. Edwards also recalled a comment made by Kern "that he did not like President Obama, being a black President." *Id.* at 293.

9

C.

Raymond Gray and his wife initiated this action in the Circuit Court for Baltimore City on June 14, 2013, and the defendants thereafter removed it to the District of Maryland, predicated on the district court's federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. On May 27, 2014, the Grays filed their operative Amended Complaint, which alleges the same eleven claims alleged in the original Complaint. Those consist of three 42 U.S.C. § 1983 claims (an excessive force claim under the Fourth Amendment, a substantive due process claim under the Fourteenth Amendment, and a claim of municipal liability for failure to train under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)); a corresponding Maryland constitutional claim; negligence and gross negligence claims; four intentional tort claims (for false imprisonment, assault, battery, and intentional infliction of emotional distress); and a loss of consortium claim. All but the three § 1983 claims are pursued under state law. The named defendants include Officers Kern and Edwards, Major Russell, Commissioner Batts, the Baltimore Police Department, and the Mayor and City Council of Baltimore (the "City").[3]

---

[3] The other named defendants are Baltimore County and the Baltimore County Police Department. The district court dismissed all claims against the City, Baltimore County, and the Baltimore County Police Department, and the Grays do not challenge those dismissals on appeal. *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Jan. 7, 2014), ECF Nos. 39 & 40; *Gray v. Kern*, No. 1:13-cv-02270 (D. Md. June 19, 2014), ECF No. 73; *Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Mar. 17, 2015), ECF No. 84.

Prior to the filing of the now-operative Amended Complaint, the district court granted in part and denied in part a dismissal motion of Commissioner Batts and the Baltimore Police Department (together, "the Baltimore police defendants"). *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Jan. 7, 2014), ECF Nos. 39 & 40. The court left pending the § 1983 claim against the Baltimore police defendants (the *Monell* claim for failure to train), plus various state law claims against Batts (the corresponding Maryland constitutional claim, the gross negligence claim, and the four intentional tort claims). The court then granted the Baltimore police defendants' motion to bifurcate, ordering a separate trial of the § 1983 claim against them and staying discovery relative thereto pending resolution of the claims against the other defendants. *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Apr. 3, 2014), ECF No. 56.

In the wake of the Amended Complaint, the district court awarded summary judgment to Officer Kern on the § 1983 claims against him (the Fourth Amendment excessive force and Fourteenth Amendment substantive due process claims), as well as the corresponding Maryland constitutional claim, the negligence claim, and the false imprisonment claim. *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Aug. 21, 2015), ECF Nos. 94 & 95, *published at* 124 F. Supp. 3d 600. With respect to the § 1983 claims, the court accepted Kern's assertion that he had fired at Gray to simply remind the trainees of the dangers of fatal funnels and only accidentally used his live service weapon instead of his Simunition weapon. Consequently, the court concluded there was no violation of either the Fourth or the Fourteenth Amendment, in that Kern did not intend to either seize or injure Gray. The court left pending against Kern the gross negligence claim; the

11

intentional tort claims for assault, battery, and intentional infliction of emotional distress; and the loss of consortium claim.

At the same time, the court awarded summary judgment to Officer Edwards and Major Russell on all claims against them. With respect to the gross negligence claim, the court deemed the evidence against Edwards and Russell to be insufficient to warrant a trial, even accepting Officer Kern's assertion that he carried his live service weapon pursuant to an agreement with Edwards. As to the § 1983 claims against Edwards and Russell (the Fourth Amendment excessive force and Fourteenth Amendment substantive due process claims), the court reasoned that — because it had already ruled that Kern was entitled to summary judgment on those claims — it was unnecessary to reach and consider the Grays' theories of Edwards's aiding and abetting liability and Russell's supervisory liability.

Thereafter, again premised on its summary judgment decision in favor of Officer Kern on the § 1983 excessive force and substantive due process claims, the district court awarded summary judgment to the Baltimore police defendants on the previously bifurcated § 1983 claim for failure to train under *Monell*. *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Feb. 4, 2016), ECF Nos. 106 & 107. Simultaneously, the court denied as premature Commissioner Batts's request for summary judgment on the state law claims yet pending against him, as the Grays had not been afforded an opportunity for discovery pertinent to those claims.

Finally, the district court resolved to dismiss as moot the remaining state law claims against Officer Kern, along with those against Commissioner Batts, upon the

12

City's deposit of a check payable to the Grays and their counsel in the sum of $200,000 — which the court ruled to be the state law cap on the damages available in this action under Maryland's Local Government Tort Claims Act. *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Apr. 13, 2016), ECF No. 112, *published at* 143 F. Supp. 3d 363. Kern had made a $200,000 offer of judgment to the Grays pursuant to Federal Rule of Civil Procedure 68 and sought dismissal on that basis. Although the court acknowledged that the Grays could obtain damages in excess of $200,000 upon proof that Kern acted with actual malice, the court judged the evidence to be insufficient to support the necessary finding. The court also rejected the Grays' argument that applying a $200,000 state law cap on damages here would engender a state constitutional violation. The City promptly deposited a $200,000 check with the court, and the court then entered a final judgment closing this action. *See Gray v. Kern*, No. 1:13-cv-02270 (D. Md. Apr. 26, 2016), ECF No. 116.

The Grays subsequently turned to this Court for relief, timely noting this appeal. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Raymond Gray and his wife seek reinstatement of the following claims: the three 42 U.S.C. § 1983 claims against Officers Kern and Edwards, Major Russell, and the Baltimore police defendants on which those defendants were awarded summary judgment; the gross negligence claim against Edwards and Russell on which they were awarded summary judgment; and the various state law claims against Kern and

Commissioner Batts that were dismissed as moot upon the City's payout of $200,000. We assess the viability of those claims in turn.

We begin with the three § 1983 claims. In pertinent part, § 1983 imposes liability on persons who, under color of state law, subject or cause a citizen to be subjected to a deprivation of a federal constitutional right. As heretofore explained, there are two § 1983 claims alleged against Officer Kern — the Fourth Amendment excessive force claim and the Fourteenth Amendment substantive due process claim. Those two claims are also alleged against Officer Edwards and Major Russell, pursuant to theories of aiding and abetting and supervisory liability. The third § 1983 claim — the claim of municipal liability for failure to train under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) — is alleged against the Baltimore police defendants.

The district court first awarded summary judgment to Officer Kern on the two § 1983 claims against him and then, premised on that decision, awarded summary judgment to Officer Edwards, Major Russell, and the Baltimore police defendants on the § 1983 claims against them. The parties agree that, if we reinstate either or both of the § 1983 claims against Kern, we should also reinstate the same claim or claims against Edwards and Russell, as well as the separate § 1983 claim against the Baltimore police defendants. Thus, our analysis focuses on the two § 1983 claims against Kern.

We review de novo the district court's award of summary judgment to Officer Kern on those § 1983 claims, viewing the facts in the light most favorable to the Grays. *See Bauer v. Lynch*, 812 F.3d 340, 347 (4th Cir. 2016). Summary judgment is not

14

appropriate unless Kern shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

In seeking summary judgment on the § 1983 claims against him, Officer Kern contended — and the district court then agreed — that the undisputed evidence is that Kern intended to fire his Simunition weapon at Gray to merely startle the trainees and thereby remind them of the dangers of fatal funnels, but that Kern accidentally fired his live service weapon instead. As such, although Kern may have terminated Gray's freedom of movement and employed excessive force in doing so, he did not have the intent to seize required to sustain a Fourth Amendment excessive force claim. *See Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989) (concluding that a seizure occurs for Fourth Amendment purposes when a person is "stopped by the very instrumentality set in motion or put in place in order to achieve that result"). Under the same view of the evidence, Kern did not have the intent to injure that is usually necessary to sustain a Fourteenth Amendment substantive due process claim. *See Waybright v. Frederick Cty.*, 528 F.3d 199, 205 (4th Cir. 2008) (explaining that there is "a strong presumption that § 1983 due process claims which overlap state tort law should be rejected," and that such a presumption can be overcome only "by showing governmental conduct so 'arbitrary' and 'egregious' that it 'shocks the conscience,' usually because a state actor intended harm without justification" (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998))).

15

We reject the premise, however, that the undisputed evidence is that Officer Kern did not intend to shoot Gray with his live service weapon. Compelling evidence to the contrary includes the following:

- During the training courses on the day of the shooting (February 12, 2013), Officer Kern carried his live service weapon despite the known danger of and prohibition against being so armed;

- Officer Kern deceived Officer Edwards throughout the day about carrying his loaded service weapon, as Edwards reminded Kern to perform standard weapons checks and confirmed that Kern had done so;

- In a separate incident prior to the shooting, Officer Kern pointed his live service weapon at Gray, causing another trainee to alert Kern that he was armed with his service weapon and thus committing a safety violation. Kern claimed the incident was inadvertent and blamed pulling the loaded service weapon on "muscle memory," but he did not thereafter disarm himself;

- Officer Kern then pointed his live service weapon at Gray for a second time that day, shooting Gray in the head;

- In the immediate aftermath of the shooting, Officer Kern provided no explanation to Officer Edwards as to why Kern was carrying his live service weapon and why he fired at Gray, and Kern refused to give his service weapon to Edwards;

- Only later, Officer Kern concocted his false exculpatory account of being armed with his live service weapon by agreement with Officer Edwards out of concern that the Rosewood campus was unsafe; and,

- Also only later, Officer Kern dubiously claimed that he intended to fire his Simunition weapon, rather than his service weapon, for the purpose of teaching trainees to avoid fatal funnels.

Viewed in the proper light — the light most favorable to the Grays — the foregoing evidence of Officer Kern's dangerous and deceptive behavior casts doubt on Kern's

16

account of the events that led to Gray's grave injury. A jury disbelieving Kern's account could find that Kern intentionally shot Gray with the live service weapon.[4]

Nevertheless, we conclude that the district court did not err in granting summary judgment to Officer Kern on the Fourth Amendment excessive force claim. The Supreme Court has recognized that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases." *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). Because Kern's shooting of Gray was unconnected from any criminal justice objective, we cannot say the shooting implicates the protections of the Fourth Amendment.

The district court did err, however, in granting summary judgment on the Fourteenth Amendment substantive due process claim. Viewed in the light most favorable to the Grays, the evidence could establish that the shooting was arbitrary, egregious, and conscience-shocking conduct intended to harm Gray. *See Waybright*, 528 F.3d at 205. In these circumstances, we are obliged to reinstate the § 1983 substantive due process claim against Kern, Officer Edwards, and Major Russell, as well as the separate § 1983 claim against the Baltimore police defendants for failure to train.

---

[4] Notably, in defending the district court's award of summary judgment on the § 1983 claims against him, Officer Kern contests the admissibility of other evidence of his alleged intent to seize and injure Gray — evidence such as Officer Edwards's testimony that he believes Kern intentionally shot Gray with the live service weapon, possibly out of racial animus. We need not assess today whether that evidence is admissible, as we do not rely on it to resolve this appeal.

B.

We next address the gross negligence claim against Officer Edwards and Major Russell, on which they were awarded summary judgment. Under Maryland law, negligence "is any conduct . . . which falls below the standard established by law for protection of others against unreasonable risk of harm." *See Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (internal quotation marks omitted). To rise to the level of gross negligence, there must be "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Id.* (internal quotation marks omitted). That is, gross negligence involves "a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id.* (internal quotation marks omitted).

The Grays pursue the gross negligence claim as an alternative to the § 1983 claims. That is, if the § 1983 claims ultimately fail because Officer Kern's account of the shooting is credited, the Grays yet seek to prove the gross negligence of Officer Edwards and Major Russell premised on Kern's evidence that he was armed with his live service weapon by agreement with Edwards.

1.

The district court granted summary judgment to Officer Edwards on the gross negligence claim despite accepting as undisputed that there was an agreement between Edwards and Officer Kern for Kern to be armed with his loaded service weapon during the tactical training courses at the Rosewood campus. The court explained that Edwards was not in a position of authority over Kern, such that Edwards could have ordered Kern

18

to leave his live service weapon outside the training facility. The court also observed that Edwards repeatedly asked Kern to conduct a weapons check, which the court described as a measure intended to ensure that Kern was carrying his live service weapon safely. In the circumstances as it painted them, the court concluded that Edwards's conduct was, at most, merely negligent.

The district court's depiction of the evidence, however, is at odds with the record. In addition to disclaiming any agreement with Officer Kern for one of them to carry a loaded service weapon, Officer Edwards clearly conveyed the following points in his testimony: that Edwards did not even know prior to the shooting that Kern was armed with his live service weapon; that, if Edwards had known, he would have — and thus could have — asked Kern to disarm and then suspended the training courses at Rosewood upon Kern's refusal to do so; that the weapons checks that Edwards requested of Kern were meant to ensure that no one inside the training facility, including Kern, was armed with a live weapon; and that live weapons are strictly forbidden in tactical training because there is no safe way to carry them or even keep them in close vicinity. That evidence wholly undermines the district court's ruling that Edwards agreed for Kern to arm himself but was not thereby grossly negligent, because Edwards could not have stopped Kern from carrying his live service weapon anyway and did his best to ensure that Kern carried the weapon safely.

Simply put, Officer Edwards' testimony is not reconcilable with Officer Kern's claim of a mutual agreement. Properly viewing the evidence, it may be concluded that — if Kern is the one telling the truth — Edwards agreed for Kern to carry his loaded service

19

weapon with reckless disregard for the consequences. As Edwards himself emphasized, live weapons are forbidden in tactical training without exception because of the grave dangers they would pose. Accordingly, there is a genuine dispute of material fact with respect to Edwards's conduct that necessitates our reinstatement of the gross negligence claim against him for further proceedings.

2.

As for Major Russell, the district court awarded summary judgment to him on the gross negligence claim because there is no evidence that his duties included exercising control over tactical training courses conducted by the Baltimore Police Department, including the course at which Gray was shot. There also is no evidence that Russell knew Officer Kern was armed with his loaded service weapon on the day of the shooting or that Russell ever acquiesced in the carrying of live weapons during tactical training courses. The Grays nevertheless seek to hold Russell liable for "permitt[ing] this training to go forward at an unsafe facility, . . . where there was a custom and practice to permit officers during training to carry live weapons despite knowing it was an unsafe practice." *See* Br. of Appellants 30. Because the Grays' theory has no factual support in the record, we must affirm the judgment in favor of Russell on the gross negligence claim.

C.

Finally, we turn to the state law claims against Officer Kern and Commissioner Batts that the district court dismissed as moot once the City deposited $200,000 with the court in reliance on Maryland's Local Government Tort Claims Act. *See* Md. Code, Cts. & Jud. Proc. § 5-301 *et seq.* The state law claims against Kern that were dismissed

20

include the gross negligence claim; three of the four intentional tort claims (for assault, battery, and intentional infliction of emotional distress); and the loss of consortium claim. Those against Batts include the Maryland constitutional claim, the gross negligence claim, and all four intentional tort claims. We review de novo the district court's dismissal of the state law claims as moot. *See Wall v. Wade*, 741 F.3d 492, 496 (4th Cir. 2014).

As the Court of Appeals of Maryland has explained, the Local Government Tort Claims Act limits the financial liability of local governments — including, as pertinent here, the Baltimore Police Department — and provides their employees with certain protections from damages. *See Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 109 A.3d 639, 648-49 & n.14 (Md. 2015). Where a local government's employee is sued for acts or omissions committed within the scope of employment, the Act requires the local government to provide a legal defense and to pay any judgment for damages (except some punitive damages) up to the specified limit on the local government's financial liability. *See* Md. Code, Cts. & Jud. Proc. §§ 5-302(a), 5-303(a)-(c). At the time Gray was shot, the Act limited the financial liability of a local government to "$200,000 per an individual claim." *See Rounds*, 109 A.3d at 649 (quoting then-current version of Md. Code, Cts. & Jud. Proc. § 5-303(a)).

Many plaintiffs can recover only the damages that a local government must pay, because the Local Government Tort Claims Act contains an immunity provision that generally protects an employee from having a judgment executed against him. *See* Md. Code, Cts. & Jud. Proc. § 5-302(b)(1). As an exception to the immunity provision,

21

however, the Act provides that "[a]n employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice." *Id.* § 5-302(b)(2)(i). For purposes of the Act, "actual malice" is defined as "ill will or improper motivation." *Id.* § 5-301(b).

In these proceedings, the district court concluded that the Grays cannot recover more than $200,000 on the state law claims against Officer Kern and Commissioner Batts, for lack of evidence that Kern acted with actual malice. Once again, however, the court improperly relied on the erroneous premise that it is undisputed that Kern inadvertently — rather than intentionally — used his loaded service weapon to fire at Gray. As discussed at length above, when viewed in the proper light, there is ample evidence on which a jury may find that Kern intentionally shot Gray with the live service weapon for the purpose of injuring him, i.e., that Kern acted with ill will, improper motivation, and actual malice. Because the applicability of the $200,000 cap on damages under the Local Government Tort Claims Act is therefore a live question, we reinstate the state law claims against Kern and Batts that the district court dismissed as moot.[5]

---

[5] In view of our conclusion that there is sufficient evidence of Officer Kern's actual malice for the recovery of damages in excess of $200,000 on the state law claims, we do not reach the issue raised by the Grays on appeal as to whether the district court erred in rejecting the argument that applying the $200,000 damages cap here would engender a state constitutional violation.

III.

Pursuant to the foregoing, we affirm the district court's judgment as to the 42 U.S.C. § 1983 excessive force claim against Officers Kern and Edwards and Major Russell, as well as the gross negligence claim against Major Russell. We vacate as to the § 1983 substantive due process and failure to train claims against Officers Kern and Edwards, Major Russell, and the Baltimore police defendants; the gross negligence claim against Officer Edwards; and the various state law claims against Officer Kern and Commissioner Batts that had been dismissed as moot. We remand for such other and further proceedings as may be appropriate.[6]

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[6] We recognize that further proceedings may also be appropriate on additional claims. For example, the district court awarded summary judgment on the Maryland constitutional claim to Officer Kern — and by extension Officer Edwards and Major Russell — for the simple reason that it is an analog to the § 1983 claims, one of which has been reinstated against those defendants. And, the court awarded summary judgment on the loss of consortium claim to Officer Edwards for lack of another colorable state law claim against him, including the now-reinstated gross negligence claim.