# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2018

Lyle W. Cayce
Clerk

No. 17-60515

SUMMER GORMAN,

      Plaintiff - Appellee

v.

ROBERT SHARP,

      Defendant - Appellant

---

Appeal from the United States District Court
for the Northern District of Mississippi

---

Before ELROD, COSTA, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

The circumstances that led to this lawsuit are unquestionably tragic—an accidental fatal shooting during an officer training session. But the Constitution does not afford a cure for every tragedy. And it does not here for one simple reason: Under established Supreme Court precedent, the Fourth Amendment concerns only intentional, not accidental, searches and seizures. Nor have the parties given any indication that the Supreme Court should revisit its precedent in light of the text or original understanding of the Fourth Amendment.

There is a pending tort action in state court arising out of this same tragedy. That state court action may very well provide a means of recovery—

No. 17-60515

unlike the Fourth Amendment, state tort actions are often available in cases that involve unintentional but negligent conduct.  But this suit is based on the Fourth Amendment, not state tort law.  And there is no Fourth Amendment violation in the absence of intentional conduct.  So the district court erred in denying qualified immunity.  We have no choice but to reverse.

I.

During a preliminary safety briefing before a firearms training exercise hosted by the Mississippi Gaming Commission, instructor and former Commission Special Agent Robert Sharp forgot to replace his real firearm with a "dummy" firearm.  As a result, Sharp accidentally discharged his real firearm against fellow instructor and Mississippi Gaming Commission Special Agent John Gorman.  Gorman subsequently died from the gunshot wound to his chest.

In this interlocutory appeal, Sharp appeals the district court's denial of his motion for judgment on the pleadings based on qualified immunity.

"'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citing *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)).  To defeat qualified immunity in a Fourth Amendment claim under 42 U.S.C. § 1983, the plaintiff must demonstrate both a bona fide Fourth Amendment violation on the facts alleged and that the violation was clearly established at the time of the official's conduct.  *See Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

The order in which a court should conduct these two inquiries is not "rigid."  *Pearson v. Callahan*, 555 U.S. 223, 240 (2009).  Here, Sharp both "maintain[s] that [he] did not violate [Gorman's] Fourth Amendment rights and that, in any event, [his] conduct did not violate any Fourth Amendment

2

rule that was clearly established at the time of the events in question." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014).

The Supreme Court has long held that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original). A "[v]iolation of the Fourth Amendment requires . . . [that the] detention or taking itself *must be willful.*" *Id.* at 596 (emphasis in original).

This Court has faithfully applied this requirement. *See, e.g., Blair v. City of Dallas*, 666 F. App'x 337, 341 (5th Cir. 2016) ("The Supreme Court has explained that a seizure occurs for purposes of the Fourth Amendment 'only when there is a governmental termination of freedom of movement *through means intentionally applied.*'") (citing *Brower*, 489 U.S. at 596-97) (emphasis in original); *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013) ("The Supreme Court and this circuit have long held that Fourth Amendment violations occur only through intentional conduct."); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) ("The constitutional right to be free from unreasonable seizure has never been equated by the [Supreme] Court with the right to be free from a negligently executed stop or arrest. There is no question about the fundamental interest in a person's own life, but it does not follow that a negligent taking of life is a constitutional deprivation."). And our sister circuits have construed *Brower* similarly. *See, e.g., Gray v. Kern*, 702 F. App'x 132, 139 (4th Cir. 2017) (even if Kern had employed excessive force, "he did not have the intent to seize required to sustain a Fourth Amendment" claim); *Stewart v. City of Middletown*, 136 F. App'x 881, 883 (6th Cir. 2005) (because Stewart had no evidence suggesting "anything but negligen[ce]," there was no seizure under the Fourth Amendment).

3

No. 17-60515

The order denying qualified immunity did not cite *Brower*—nor did it confront more generally with what constitutes a "seizure" under the Fourth Amendment. But *Brower* and subsequent precedents foreclose liability under the Fourth Amendment in the absence of intentional conduct. Under the plain facts of this case, the shooting here of Gorman—as tragic as it was—was not "willful[ly]" performed by Sharp. *Brower*, 489 U.S. at 596. Nor was Gorman's "termination of freedom of movement [accomplished] through means intentionally applied." *Id.* at 596-97. It is undisputed that Sharp genuinely believed he was using a dummy firearm. His only intention in pulling the trigger on co-instructor Gorman was to educate his audience as a firearms training instructor.

Accordingly, we reverse the district court's denial of qualified immunity and remand with instructions that the district court dismiss the remaining Fourth Amendment claim against Sharp.

4