# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2025

Lyle W. Cayce
Clerk

No. 24-20445

_____

Stephen Benavides,

*Plaintiff—Appellee*,

*versus*

Deputy J. Nunez,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1289

_____

Before Elrod, *Chief Judge*, Engelhardt, *Circuit Judge*, and Guidry, *District Judge*.[*]

Greg Gerard Guidry, *District Judge*:

Defendant-Appellant Deputy Jose Nunez of the Harris County Sheriff's Office responded to a 911 call regarding an alleged home invasion in progress. Shortly after arriving, Deputy Nunez shot the homeowner's father, Plaintiff-Appellee Stephen Benavides, who was unarmed, when the two met at the home's front door. As a result, Benavides filed suit, alleging excessive

_____

[*]United States District Judge for the Eastern District of Louisiana, sitting by designation.

No. 24-20445

force resulting from an unlawful shooting. Contending that he accidentally discharged his firearm as he moved it from one hand to the other, Deputy Nunez sought summary judgment on grounds of qualified immunity. Finding intent to be a genuinely disputed material fact, the district court denied Deputy Nunez's motion. Because we lack jurisdiction to review that determination, we DISMISS this interlocutory appeal.

## I.

## A.

On December 26, 2019, at 7:08 p.m., Sandra Garibay called 911 to report that she had heard an intruder in her home. She informed the dispatcher she had locked herself and her children in an upstairs bedroom. Garibay also said she had called her father, Stephen Benavides, who was en route in a white Chevrolet pickup truck and always parked his white Chevrolet pickup truck on the front lawn near the front door of her home. Benavides arrived before the police and discovered there was no intruder. But neither he nor Garibay contacted the police to make them aware that there was no longer an emergency.

Deputy Nunez and his partner rushed to the house upon receiving the dispatch. When the deputies arrived, they found a white Chevrolet pickup truck parked on the front lawn. They unholstered their guns, surveyed the perimeter of the house, and looked inside the pickup truck before making their way to the front door.

Body camera footage reveals that Deputy Nunez faced the front door with his gun pointed at the door. Deputy Nunez stood to the right side of the door and moved his firearm from his right hand to his left hand. He then placed his right hand on the doorknob. At that moment, the front door was opened by Benavides from the inside. The following events happened in rapid succession: Deputy Nunez raised his firearm with his left hand, then

2

had both hands on the gun's grip, the weapon discharged, and finally, he moved the gun back to his right hand. A bullet hit Benavides in the thigh.

The entire event happened in a matter of seconds. The body camera footage reflects that Benavides was unarmed and never made any threats, attempted to flee, or performed any dangerous movements.[1] Deputy Nunez did not announce a warning before the shooting. Deputy Nunez provided medical assistance, and Benavides was taken to the hospital.

## B.

Benavides sued Deputy Nunez under 42 U.S.C. § 1983 alleging excessive force. Deputy Nunez invoked qualified immunity and moved for summary judgment.

The district court denied the motion. The court applied the two-part qualified immunity analysis and found a genuine dispute of material fact concerning the first prong of the analysis, namely, whether Benavides was shot intentionally or accidentally. The district court found that the body camera footage, combined with other relevant evidence, presents a dispute as to objective-reasonableness, because a jury could, after evaluating and weighing the evidence, conclude that the facts support either party's version of events. A fact finder could possibly find the shooting was intentional, and that Deputy Nunez deliberately aimed his weapon with both hands to injure whoever was behind the door. It is also possible that the shooting could be viewed as accidental and occurred unintentionally when Deputy Nunez switched the gun from his left hand to his right. The district court thus found a "genuine [dispute] of material fact about whether [Deputy] Nunez shot

---

[1] After the shooting, Deputy Nunez observed a relative of Benavides in the home holding a knife. However, this is not relevant because the observation was made after the shooting and had no impact on Deputy Nunez's actions.

Benavides intentionally or accidentally." The court held this dispute was material to qualified immunity, because intentionally shooting an unarmed, non-threatening individual is objectively unreasonable. As to the second prong, the court, citing *Cole v. Carson*, 935 F.3d 444, 449 (5th Cir. 2019), held that it was clearly established at the time of the incident that an officer could not shoot an unarmed, non-threatening individual "without warning" or "sufficient time to respond." Deputy Nunez timely appealed.

## II.

We review interlocutory appeals invoking qualified immunity *de novo*. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Once an official pleads qualified immunity, the burden shifts to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). While it is the plaintiff's burden to negate qualified immunity, "all inferences are drawn in his favor." *Id.*

For interlocutory appeals invoking qualified immunity, this court "lack[s] the authority to review the district court's decision that a genuine factual dispute exists . . .." *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013). We may review the materiality, "but not the genuineness," of a factual dispute. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). We do not have jurisdiction to consider interlocutory appeals of the denial of qualified immunity that challenge only issues of fact. *Michalik v. Hermann*, 422 F.3d 252, 257–263 (5th Cir. 2005); *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022). This court must "accept the [plaintiff's] version of the facts as true." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (alternation in original) (citing *Kinney v. Weaver*, 367 F.3d 337, 346–47 (5th Cir. 2004) (en banc). The only exception to our jurisdictional limitation is when the plaintiff's version of events is "blatantly contradicted" and "utterly discredited" by video evidence. *See, e.g.*, *Curran v. Aleshire*, 800 F.3d 656, 663–64 (5th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). Review of the body

camera footage and other relevant evidence in this case supports at least two reasonable interpretations—an accidental discharge or an intentional shooting. *See Smith v. Lee*, 73 F.4th 376, 387 (5th Cir. 2023).

## III.

Qualified immunity shields an officer from liability if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To overcome qualified immunity, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (internal citations omitted). An officer who defeats either prong is entitled to qualified immunity. *See, e.g.*, *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021).

In excessive force cases, "a plaintiff must demonstrate (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Hutcheson v. Dallas County*, 994 F.3d 477, 480 (5th Cir. 2021) (internal quotation marks omitted). "The second and third elements collapse into a single objective-reasonableness inquiry." *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).

Deputy Nunez attacks the genuineness but not the materiality of this dispute. His arguments presuppose an accidental shooting. As to prong one of the qualified immunity analysis, Deputy Nunez contends the shooting was accidental and does not amount to an intentional constitutional deprivation. With reference to prong two, Deputy Nunez asserts there is no clearly established Fourth Amendment right to be free from unintentional force. We

cannot assume an accidental shooting because the district court found that issue to be genuinely disputed.

But we also cannot upset the district court's finding here because "we lack the jurisdiction to review the district court's decision that a genuine issue of fact exists." *Ramirez v. Martinez*, 716 F.3d 369, 373 (5th Cir. 2013). In this interlocutory appeal, our review is constrained to whether factual disputes are material to the underlying constitutional issue. *See Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc).[2] Deputy Nunez however does not challenge the materiality of any factual dispute; instead, he argues that "summary judgment evidence overwhelmingly establishes that [his] firearm accidentally discharged . . .." Precisely because his appeal concerns the genuineness of the factual dispute found by the district court, we lack jurisdiction.

We are not allowed to second guess the district court's determination that a genuine dispute of material fact exists. A jury must resolve the competing factual evidence and make the ultimate determination of qualified immunity.[3] Accordingly, we DISMISS this appeal for lack of jurisdiction.

---

[2] Under Deputy Nunez's view of the events, he is entitled to qualified immunity. There is no Fourth Amendment violation in the absence of intentional conduct. *Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018). The "governmental termination of freedom of movement" must be made "*through means intentionally applied.*" *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989). But an intentional shooting in these circumstances could overcome qualified immunity. It is clearly established that intentionally shooting an unarmed, non-threatening individual without first announcing a warning or waiting for a response when feasible is excessive force. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), *as revised* (Aug. 21, 2019); *Baker v. Putnal*, 75 F.3d 190, 193 (5th Cir. 1996). Accordingly, the dispute "might affect the outcome of the lawsuit," so it is material. *See, e.g.*, *Prim v. Stein*, 6 F.4th 584, 590 (5th Cir. 2021).

[3] While a factual dispute precludes finding qualified immunity at the summary judgment stage, qualified immunity remains a live issue at trial. *Sims v. Griffin*, 35 F.4th

No. 24-20445

_____

945, 952 n.24 (5th Cir. 2022) (citing Pattern Civ. Jury Instr. 5th Cir. 10.3 (2020)). The jury will resolve the underlying factual dispute, guided by the district court's instructions regarding the law, to determine the "objective legal reasonableness of the officer's conduct." *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998).